ELIZABETH M. TAFE
A. SUSAN LAWSON
National Labor Relations Board, First Region
Thomas P. O'Neill Federal Building
10 Causeway Street, Suite 601
Boston, Massachusetts  02222
Telephone Numbers:  (617) 565-6739/6741

Attorneys for Petitioner

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of<br><br>ROSEMARY PYE, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br>                              Petitioner<br><br>              v.<br><br>THE LONGY SCHOOL OF MUSIC,<br>                              Respondent | Civil No. _____<br><br><br><br><br><br>**PETITION FOR INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED** |

To the Honorable, the Judges of the United States District Court, District of Massachusetts.

Rosemary Pye, Regional Director of the First Region of the National Labor Relations Board, petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended, 61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160 (j), for appropriate injunctive relief pending the final disposition of the administrative matters involved here pending before the Board on an Amended Complaint of the Acting General Counsel of the Board, alleging that The Longy School of Music, herein referred to as Longy, has engaged in, and is engaging in, acts and conduct in violation of Sections 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(1) and (5).

Section 10(j) of the Act authorizes United States district courts to grant temporary injunctions pending the Board's resolution of unfair labor practice proceedings. This provision reflects Congressional recognition that, because the Board's administrative proceedings can be protracted, absent interim relief, a respondent may accomplish its unlawful objectives before being placed under any legal restraint and thereby render a final Board order ineffectual. See *Fuchs v. Hood Industries, Inc.,* 590 F.2d 395, 396 (1st Cir. 1979), citing S. Rep. No. 105, 80th Cong., 1st Sess., at pp. 8, 27 (1947), reprinted at *Legislative History of the Labor Management Relations Act of 1947* 414, 433 (Government Printing Office 1985). Thus, Section 10(j) relief was intended to prevent the potential nullification or frustration of the Board's remedial authority caused by the passage of time inherent in Board administrative and enforcement litigation. See, e.g., *Asseo v. Centro Medico del Turabo, Inc.,* 900 F.2d 445, 454 (1st Cir. 1990); *Angle v. Sacks*, 382 F.2d 655, 660 (10th Cir. 1967).

To resolve a Section 10(j) petition, a district court in the First Circuit considers only two issues: whether there is "reasonable cause to believe" that a respondent has violated the Act and whether temporary injunctive relief is "just and proper." See, e.g., *Asseo v. Centro Medico del Turabo, Inc.,* 900 F.2d at 450; *Asseo v. Pan American Grain Co.*, 805 F.2d 23, 25 (1st Cir. 1986). As the court indicated in *Pye v. Sullivan Brothers Printers*, 38 F.3d 58, 147 LRRM 2584 (1st Cir. 1994), however, to the extent that the reasonable cause test still survives, it is, in any event, subservient to the question, posed under the just and proper standard, of whether the Board has demonstrated a likelihood of success on the merits. 147 LRRM at 2588, n. 7.

Petitioner contends that, on January 20, 2010, a unit of employees of Longy selected the American Federation of Teachers, Massachusetts, herein referred to as the Union, as their exclusive collective-bargaining representative at a Board-conducted, secret ballot election. Pursuant to

Section 9(a) of the Act, the Board certified the Union as the employees' representative.  Shortly thereafter, Longy and the Union began bargaining in an attempt to reach agreement on an initial comprehensive collective-bargaining agreement covering wages and working conditions of the bargaining unit employees.  In general, an employer may not make changes to the *status quo* regarding wages and working conditions after a union is elected, without giving the union prior notice and a meaningful opportunity to bargain about those changes.  *Pleasantview Nursing Home*, 335 NLRB 961, 962 (2001); *Bottom Line Enterprises*, 302 NLRB 373 (1991); enfd. sub nom. *Master Window Cleaning, Inc. v. NLRB,* 15 F. 3d 1087 (9th Cir. 1994).

On February 15, 2010, just two weeks after the Union was certified, Longy announced directly to employees that a meeting would be held on March 5, 2010, to inform employees about significant developments at Longy, including the implementation of unspecified "strategic initiatives." Despite the Union's explicit request that Longy bargain in good faith about any changes in working conditions before Longy announced them, Longy refused to either meet with or bargain with the Union about the changes before March 5, 2010.  Then, on March 5, 2010, Longy, by its President, announced that it had made significant changes in terms and conditions of employment to be effective the following school year and that each individual employee would receive a letter setting forth what specifically would happen to his or her job by March 15, 2010.  The President announced these changes as *faits accomplis*.  On March 12, 2010, at their first collective-bargaining session, Longy informed the Union that it would not bargain about the decisions to change terms and conditions of employment and that it would not provide the Union notice of the changes before it issued individual letters to employees.  Longy sent letters directly to employees dated March 11, 2010 and March 12, 2010, informing each employee individually about the status of his or her job. Eight bargaining unit employees were told their employment was terminated; thirty-three were told

they could no longer teach in one of the School's two divisions; and five were told their positions would no longer include their work, which was bargaining unit work, as Chair/Coordinator in the Community Programs Division, herein referred to as CP Chair.

Following these substantial and pervasive changes in terms and conditions of employment, Longy continued to make changes in working conditions without giving the Union prior notice or opportunity to bargain about the changes, even though the parties were meeting regularly in collective-bargaining sessions. On about June 1, 2010, by letter, Longy informed employees directly, bypassing the Union, that it had made changes to their health insurance carrier, premiums and benefits, effective July 1, 2010. Then, in early July, 2010, Longy changed the amount it contributed to two employees' health insurance premiums and the way it deducted the premiums from their paychecks. Longy did not give the Union prior notice or opportunity to bargain about these changes, as it was required to do.

By these acts, Longy has harmed, and continues to harm, employees by denying them employment and employment opportunities. Longy's actions have harmed the bargaining unit by terminating the employment of about 9 percent of the bargaining unit and by significantly changing the jobs of about 50 percent of bargaining unit employees. Longy's actions, having changed the status quo with such blunt shock and magnitude, have forced the Union to bargain from a severely weakened position since the very initiation of collective-bargaining. In effect, Longy's actions have put the Union in a position where it will have to make concessions to "bargain back" what has unlawfully been taken away. The parties continue to meet to attempt to negotiate, but, as a consequence of Longy's unlawful actions, the parties have failed to make <u>any</u> significant progress toward an overall agreement.

In support, Petitioner respectfully shows as follows:

1. Petitioner is the Regional Director of the First Region of the Board, an agency of the United States Government, and files this petition for and on behalf of the Board.

2. Jurisdiction of the Court is invoked pursuant to Section 10(j) of the Act.

3. Longy maintains an office and place of business within this judicial district, in Cambridge, Massachusetts, referred to here as the Longy facility, where it is engaged in the business of providing music education to students of all ages as a not-for-profit educational institution.

4. On August 9, 2010, the Union filed with the Board an original charge in Board Case 1-CA-46304, alleging Longy is engaged in unfair labor practices in violation of Sections 8(a)(1) and (5) of the Act. A copy was served on Longy by regular mail on August 9, 2010. On October 13, 2010, the Union filed an amended charge, alleging that Longy is engaged in unfair labor practices in violation of Sections 8(a)(1) and (5) of the Act, and a copy was served on Longy on October 13, 2010.

5. This charge and amended charge were referred to Petitioner as Regional Director of the First Region of the Board for investigation.[1] Thereafter, following an investigation in which all parties had an opportunity to present both evidence and argument, and pursuant to Section 10(b) of the Act, on October 13, 2010, the Regional Director issued a Complaint and Notice of Hearing against Longy, and on October 14, 2010, the Regional Director issued an Amended Complaint and Notice of Hearing against Longy, alleging that it was engaging in unfair labor practices in violation of Sections 8(a)(1) and (5) of the Act. On November 12, 2010, the Regional Director issued an Amendment to the Amended Complaint.

---

[1] As of the date of filing, additional charges are pending against Longy alleging violations of Section 8(a)(1), (3), and (5) of the Act. This Petition does not deal with these additional charges.

6. The allegations in the Amended Complaint, as amended, are scheduled to be heard before an Administrative Law Judge in Boston, Massachusetts on December 13, 2010, and continuing on consecutive days thereafter.[2]

7. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, true copies of the Complaint, the Amended Complaint, the Amendment to the Amended Complaint, the Answers filed by Longy, and the original charge and amended charge in Board Case 1-CA-46304, are attached and marked as Petitioner's Exhibits A through F, respectively, and are incorporated here as though fully set forth.

8. Petitioner has reasonable cause to believe that the allegations of the Amended Complaint, as amended, are true, and that Longy has engaged in and is now engaging in unfair labor practices within the meaning of Sections 8(a)(1) and (5) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act.

9. More particularly, Petitioner has reasonable cause to believe that:

(a) During the calendar year ending December 31, 2009, Respondent, in conducting its business operations described above in paragraph 3, derived gross revenues, excluding contributions that, because of limitations by the grantor, are not available for operating expenses, in excess of $1 million.

(b) During the calendar year ending December 31, 2009, Respondent, in conducting its business operations as described above in paragraph 3, purchased and received at its Cambridge

---

[2] Although the hearing in the underlying unfair labor practice charge in Case 1-CA-46304 is currently scheduled to commence on December 13, 2010, the Regional Director is currently investigating additional unfair labor practice charges filed against Longy by the Union. In the event the Regional Director authorizes complaint in any of these additional charges, it would be necessary, absent settlement, to consolidate those charges with the Case 1-CA-46304 for hearing before an administrative law judge. In that event, the hearing before an administrative law judge might have to be postponed in order for an amended consolidated complaint to be issued, answer to be filed, and in order for the parties to prepare to litigate the additional unfair labor practices before an administrative law judge.

facility goods valued in excess of $5,000 directly from points outside the Commonwealth of Massachusetts.

(c) At all material times, Longy has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

(d) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

(e) At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Karen Zorn | ---- | President/CEO |
| Kalen Ratzlaff | ---- | Chief of Staff/Director of Human Resources and Information Systems |
| Wayman Chin | ---- | Dean, Conservatory |
| Miriam Eckelhoefer | ---- | Director, Community Programs |
| Howard Levy | ---- | CFO |
| Steven Tremble | ---- | Vice President Institutional Advancement |

(f) On about March 5, 2010, at an all-faculty meeting in the auditorium at Respondent's Cambridge facility, Respondent, by Karen Zorn:

  i. Implied to employees that it would be futile for them to continue to support the Union or to have a union represent them in collective-bargaining; and

  ii. Impliedly threatened employees with unspecified reprisals if they supported the Union and were not loyal to Respondent.

(g) The following employees of Respondent, herein called the Unit, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All faculty currently teaching, and who have a weekly average of at least three benefit units in one of the last two fiscal years, excluding all other employees, visiting faculty, administrators, confidential employees, office clerical employees, managers, guards, and supervisors as defined in the Act.

(h) On February 1, 2010, the Union was certified as the exclusive collective-bargaining representative of the Unit.

(i) At all times since February 1, 2010, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

(j) About February 15, 2010, Respondent, by email from President/CEO Zorn to employees, announced that a meeting with Unit employees would be held on March 5, 2010, to announce significant developments at Respondent and the implementation of unspecified "strategic initiatives."

(k) The significant developments and strategic initiatives referred to above in subparagraph (j) and described below in subparagraph (q), relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(l) On about February 23, 2010, the Union, by letter, requested Respondent bargain in good faith about any changes in working conditions before it announced them on March 5, 2010.

(m) On about March 2, 2010, Respondent, by letter, refused to either meet with or bargain with the Union about the changes it planned to announce on March 5, 2010.

(n) On about March 5, 2010, Respondent, by President/CEO Zorn, at an all-faculty meeting, informed Unit employees that the School had made changes in terms and conditions of employment to be effective the following school year and that each individual employee would receive a letter before about March 15, 2010, setting forth what would happen to his or her job.

(o) The changes in terms and conditions of employment to be effective the following school year referred to above in subparagraph (n), and described below in subparagraph (q), relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(p) On about March 12, 2010, Respondent, at a collective-bargaining session with the Union, informed the Union that Respondent would not bargain about its decisions to change terms and conditions of employment referred to above in subparagraphs (j) and (n), and described

below in subparagraph (q), and would not provide the Union prior notice of the changes it was issuing to employees by the individual letters also referred to above in subparagraph (n).

(q) On about March 11, 2010 and March 12, 2010, by individual letters addressed to each employee, Respondent informed employees that Respondent had made the following changes to their terms and conditions of employment, which were effective the following school year, 2010-2011:

  i. The following employees were told their employment would be terminated entirely: Holly Barnes, Faina Bryanskaya, Eileen Hutchins, Eugene Kim, Dianne Pettipaw, Sally Pinkas, Sophie Vilker, and John Ziarko.

  ii. The following employees were told their positions would no longer include performing work in the Conservatory: Elizabeth Anker, Deborah Beers, D'Anna Fortunato, Sandra Hebert, Clay Hoener, Emily Romney, and Shizue Sano.

  iii. The following employees were told their positions would no longer include performing work in the Community Programs Division, with limited exceptions: Peter Aldins, Leslie Amper, Anton Belov, Laura Bossert, Paul Brust, Phoebe Carrai, Olivia Cheever, Jonathan Cohler, Anne Elvins, Eric Entwistle, Douglas Freundlich, Randall Hodgkinson, Robert Honeysucker, Terry King, Ginny Latts, Dana Maiben, Takaaki Masuko, Laurie Monahan, Vanessa Mulvey, David Patterson, Ken Pierce, Eric Rosenblith, Ben Schwendener, Julie Scolnik, Jayne West, and Noriko Yasuda.

  iv. The following employees were told their positions would no longer include work performed as CP Chairs: Spencer Aston, Clay Hoener, Lisa Lederer, Eleanor Perrone, and Marta Zurad.

  v. Jean Rife was told she could no longer teach modern French Horn in the Conservatory and was reassigned to the Early Music Program to only teach Baroque Horn

(r) The subjects set forth above in subparagraph (q) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(s) On about June 1, 2010, Respondent implemented the changes described above in subparagraph (q).

(t) On about March 5, 2010, Respondent announced it would remove the work of the CP Chairs from the bargaining unit and assign it to management positions.

(u) On about June 1, 2010, Respondent removed the work of the CP Chairs from the bargaining unit and assigned it to management positions.

(v) The subjects set forth above in subparagraphs (t) and (u) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(w) On about June 1, 2010, Respondent, by letter from Kalen Ratzlaff, informed Unit employees that their health insurance carrier, premiums, and certain benefits had been changed, effective July 1, 2010.

(x) On about July 1, 2010, Respondent changed the health insurance carrier, premiums, and certain benefits for Unit employees.

(y) In about early July, 2010, the specific date not yet known to the Acting General Counsel, Respondent changed the amount it contributed to the health care insurance premiums of Unit employees Clayton Hoener and Lisa Lederer and the way it deducted their employee contributions from their paychecks.

(z) The subjects set forth above in subparagraphs (w), (x) and (y) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(aa) On about March 5, 2010, Respondent, by Karen Zorn, at a full-faculty meeting, bypassed the Union and dealt directly with its employees in the Unit by announcing changes in terms and conditions of employment as *faits accomplis*.

(bb) On about March 11, 2010 and March 12, 2010, by individual letters to each employee, Respondent, by Karen Zorn, Wayman Chin, and Miriam Eckelhoefer, bypassed the Union and dealt directly with its employees in the Unit by telling employees their terms and

conditions of employment had been unilaterally changed, and offering to discuss concerns directly with employees.

(cc) The terms and conditions of employment referred to above in subparagraphs (aa) and (bb) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(dd) Respondent engaged in the conduct described above in subparagraphs (j) through (cc) without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct and the effects of this conduct.

(ee) By the conduct described above in subparagraph (f), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(l) of the Act.

(ff) By the conduct described above in subparagraphs (j) through (dd), Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(5) and (1) of the Act.

(gg) The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

(hh) The unfair labor practices committed by Longy have taken place in this judicial district.

10. Longy's unfair labor practices, as described above, have harmed and are continuing to harm the unit employees, the Union, and the parties' collective-bargaining process. Petitioner submits that unless these flagrant unfair labor practices are immediately enjoined and appropriate injunctive relief granted, Longy's violations of the Act will continue, causing irreparable harm to employees and to the Union, the employees' newly elected collective-bargaining representative. Petitioner submits further that unless Longy's unfair labor practices are immediately enjoined and appropriate injunctive relief granted, enforcement of important provisions of the Act and of public

policy will be frustrated before Longy can be placed under legal restraint through the administrative procedures set forth in the Act, consisting of a Board Order and an Enforcement Decree of the United States Court of Appeals.  It is likely that substantial and irreparable harm will result to Longy's employees and their statutorily protected right to organize unless the unfair labor practices described above are immediately enjoined and appropriate relief granted.  Unless the eight terminated employees are reinstated <u>immediately</u> and the work opportunities of the other employees reestablished <u>immediately</u>, many employees will have moved on to other work opportunities by the time the Board's final remedial powers can be actualized, and the bargaining Unit will be irreparably and permanently denied their participation.  If, after the completion of the Administrative Law Judge's Decision, the submission of the Decision to the Board, and the issuance of a Board decision, it becomes necessary to seek enforcement in the Court of Appeals, it may be years before Longy's unlawful conduct is restrained.  Unless injunctive relief is immediately obtained, the effectiveness of the Board's final order will likely be nullified, the administrative procedure rendered meaningless, and Longy will continue in its above-described unlawful conduct during the pendency of the proceedings before the Board, with the result that, during this period, Longy's employees will be deprived of their chosen representation by the Union and their statutory right to make such a choice rendered a nullity.

    11. By terminating employees, changing employees' jobs, and moving work out of the bargaining unit without giving the Union notice or meaningful opportunity to bargain about any of the unilateral changes in terms and conditions of employment, Longy conveyed and continues to convey to its employees that the Union is powerless to effectively represent them, and that the government is powerless to restrain this unlawful conduct.  That impression will intensify as the underlying unfair labor practice proceeding takes its course if the requested interim injunctive relief

is not granted.  Here, Longy has been engaging in unfair labor practices since the very inception of its collective-bargaining relationship with the Union.  Only by requiring Longy to reinstate its statutory mandate to recognize and bargain with the Union can such irrevocable damage to the bargaining process be prevented.  Otherwise, Longy's unlawful conduct can result in permanent injury to the employees' loyalties to the Union that the Board's administrative order in due course will be unable to adequately remedy, and the Union will be denied its right to bargain collectively with Longy on behalf of Longy's employees.  Then, Longy's employees will be denied the right to engage in union and/or protected activities, and Longy will reap benefits from its unlawful conduct, all in disregard for the policies of the Act and the public interest.

12.  Petitioner submits that, in balancing the equities in this matter, the harm that will be suffered by the Union, the employees, the public interest, and the purposes and policies of the Act if injunctive relief is not granted greatly outweighs any harm that Longy may suffer if such injunctive relief is granted.

13.  There is no adequate remedy at law for the irreparable harm caused by Longy's unfair labor practices, as described above.

14.  Granting the preliminary injunction requested by Petitioner will cause no undue hardship to Longy.

15.  To avoid the serious consequences referred to above, it is essential, just and proper, and appropriate for the purposes of effectuating the remedial purposes of the Act and avoiding substantial and irreparable injury to such policies, the public interest, the employees, and the Union, and in accordance with the purposes of Section 10(j) of the Act that, pending final disposition by the Board, Longy be enjoined and restrained as here prayed.

WHEREFORE, Petitioner respectfully requests the following:

1.  That the Court issue an order directing Longy to file an Answer to each of the allegations set forth and referenced in this Petition and to appear before the Court, at a time and place fixed by the Court, and show cause, if any there be, why, pending final disposition of the matters here involved now pending before the Board, Longy, its officers, representatives, supervisors, agents, servants, employees, attorneys, and all persons acting on its behalf or in participation with it, should not be enjoined and restrained from the acts and conduct described above, similar or like acts, or other conduct in violation of Sections 8(a)(1) and (5) of the Act, or repetitions thereof, and that this Petition be disposed of on the basis of sworn affidavits, without oral testimony, absent further order of the Court.

2.  That the Court issue an order directing Longy, its officers, representatives, supervisors, agents, servants, employees, attorneys, and all persons acting on its behalf or in participation with it to cease and desist from the following acts and conduct, pending the final disposition of the matters involved now pending before the National Labor Relations Board:

    (a) Implying to employees that it is futile to have the American Federation of Teachers, Massachusetts, AFL-CIO, or any other labor organization, represent them for the purposes of collective-bargaining.

    (b) Impliedly threatening employees with termination or unspecified reprisals if they are not loyal to the Employer, support the Union, or assert their Section 7 rights.

    (c) Unilaterally changing employees' terms and conditions of employment, including by: implementing a reorganization plan; terminating employees; divisionally reassigning employees; taking away CP Chair positions; removing work from the bargaining unit; unilaterally changing the manner in which employees Clay Hoener's and Lisa Lederer's health insurance contributions are calculated and how they are deducted from their paychecks, without giving the

Union prior notice and a meaningful opportunity to bargain about the proposed changes and the effects of those changes on unit employees.

   (d) Failing and refusing to bargain with the American Federation of Teachers Massachusetts, AFL-CIO as the exclusive collective-bargaining representative of the employees in the following appropriate unit by unilaterally implementing changes in terms and conditions of employment during negotiations for a collective-bargaining agreement in the absence of overall impasse on the entire agreement:

> All faculty currently teaching, and who have a weekly average of at least three benefit units in one of the last two fiscal years, excluding all other employees, visiting faculty, administrators, confidential employees, office clerical employees, managers, guards, and supervisors as defined in the Act.

   (e) Announcing directly to employees changes in terms and conditions of employment for which it has not given the Union prior notice and meaningful opportunity to bargain.

   (f) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

  3.  That the Court further order Longy, its officers, representatives, supervisors, agents, servants, employees, attorneys and all persons acting on its behalf or in participation with it to take the following steps pending the final disposition of the matters here involved now pending before the National Labor Relations Board, within five days of the issuance of the District Court's Decision and Order to:

   (a) Bargain collectively and in good faith with the Union as the exclusive collective-bargaining representative of all the employees in the appropriate unit described above concerning terms and conditions of employment and, if an understanding is reached, embody it in a signed agreement;

(b) Offer in writing to employees Holly Barnes, Faina Bryanskaya, Eileen Hutchins, Eugene Kim, Dianne Pettipaw, Sally Pinkas, Sophie Vilker, and John Ziarko, full interim reinstatement to their prior positions with the Employer or if those positions no longer exist, to substantially equivalent positions without prejudice to their seniority or any rights and privileges previously enjoyed, displacing, if necessary any newly hired or reassigned worker;

(c) Reinstate employees Elizabeth Anker, Deborah Beers, D'Anna Fortunato, Sandra Hebert, Clay Hoener, Jean Rife, Emily Romney, and Shizue Sano to the positions they held in the Conservatory on March 15, 2010, with full remuneration, benefits and privileges;

(d) Reinstate employees Peter Aldins, Leslie Amper, Anton Belov, Laura Bossert, Paul Brust, Phoebe Carrai, Olivia Cheever, Jonathan Cohler, Anne Elvins, Eric Entwistle, Douglas Freundlich, Randall Hodgkinson, Robert Honeysucker, Terry King, Ginny Latts, Dana. Maiben, Takaaki Masuka, Laurie Monahan, Vanessa Mulvey, David Patterson, Ken Pierce, Eric Rosenblith, Ben Schwendener, Julie Scolnik, Jayne West, and Noriko Yasuda to the positions they held in the Community Programs Division on March 15, 2010, with full remuneration, benefits, and privileges;

(e) Reinstate employees Spencer Aston, Clay Hoener, Lisa Lederer, Eleanor Perrone, and Marta Zurad to the CP Chair positions they held on March 15, 2010;

(f) Return all the CP Chair work to the bargaining unit;

(g) Rescind by letter the changes announced by letters dated March 11, 2010, and March 12, 2010;

(h) Restore the manner in which the employer's contribution to Clay Hoener's and Lisa Lederer's health insurance premium was calculated to the manner it was calculated in fiscal year ending June 30, 2010, and restore the manner in which it was previously deducted from Hoener's and Lederer's paychecks;

(i) Post copies of the District Court's order at Longy's Cambridge, Massachusetts, locations where notices to employees are customarily posted, those postings to be maintained during the pendency of the Board's administrative proceedings free from all obstructions and defacements; all unit employees shall have free and unrestricted access to said notices;

(j) Grant to agents of the Board reasonable access to Longy's Cambridge, Massachusetts, facilities in order to monitor compliance with this posting requirement; and

(k) Within twenty-one (21) days of the issuance of the District Court's Order, file with the District Court and submit a copy to the Regional Director of Region One of the Board, a sworn affidavit from a responsible Employer official setting forth, with specificity, the manner in which the Employer has complied with the terms of this decree, including how it has posted the documents required by the Court's decree.

4. That upon return of said Order to Show Cause, the Court issue an order enjoining and restraining Longy as prayed and in the manner set forth in Petitioner's proposed preliminary injunction lodged herewith.

5. That the Court grant such other and further preliminary relief that may be deemed just and proper.

DATED AT Boston, Massachusetts, this 16th day of November, 2010.

/s/ Rosemary Pye _____
Rosemary Pye, Regional Director
BBO #408380
National Labor Relations Board, First
Region Thomas P. O'Neill Federal Building
10 Causeway Street, Suite 601
Boston, Massachusetts 02222

Lafe E. Solomon
Acting General Counsel

Ronald S. Cohen
Regional Attorney, First Region

    /s/ Elizabeth M. Tafe_____
Elizabeth M. Tafe, BBO #641529

/s/ A. Susan Lawson_____
A. Susan Lawson, BBO #628347
Counsels for the Petitioner
National Labor Relations Board, First Region
Thomas P. O'Neill Federal Building
10 Causeway Street, Suite 601
Boston, Massachusetts 02222
(617) 565-6739/6741
Elizabeth.Tafe@nlrb.gov
Susan.Lawson@nlrb.gov

**Certificate of Service**

I certify that a true copy of this Petition for Injunction under Section 10(j) of the National Labor Relations Act, as Amended, a set of Exhibits to the Petition for Injunction, a proposed Order to Show Cause, a proposed Findings of Facts and Conclusions of Law, and a proposed Preliminary Injunction, shall be served upon the attorneys of record for each party by mail on November 16, 2010, at the addresses below.

/s/ Elizabeth M. Tafe\_\_
BBO #641529

Attorneys of Record:

Donald W. Schroeder
Mintz Levin
One Financial Center
Boston, MA 02111
dschroeder@mintz.com

Haidee Morris
American Federation of Teacher Massachusetts
38 Chauncy Street, Suite 402
Boston, MA 02111
hmorris@aftma.net

COMMONWEALTH OF MASSACHUSETTS)
                                      )    ss:
COUNTY OF SUFFOLK           )

I, Rosemary Pye, being duly sworn, depose and say that I am Regional Director of the First Region of the National Labor Relations Board; that I have read the foregoing petition and exhibits and know the contents; that the statements there made upon personal knowledge are true and those made upon information and belief I believe to be true. I further believe and attest that this petition and exhibits establish that there is good cause to expedite the consideration of this action pursuant to Chapter 11 of Title 28 U.S.C. Section 1657.

                                                _____
                                                Rosemary Pye, Regional Director
                                                BBO #408380

Subscribed and sworn to me this
16th day of November, 2010.

_____
Notary Public

My Commission Expires: July 29, 2016